UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHANNES GONZALEZ,

                            **Petitioner,**

     - *against* -

ROBERT ERCOLE, Superintendent, Greenhaven
Correctional Facility,

                        **Respondent(s).**

**08 Civ. 403 (CS) (PED)**

<u>REPORT AND
RECOMMENDATION</u>

TO:    **THE HONORABLE CATHY SEIBEL,
UNITED STATES DISTRICT JUDGE**

## I. <u>INTRODUCTION</u>

Johannes Gonzalez ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus*

pursuant to 28 U.S.C. § 2254, from his June 12, 2003 conviction entered in Westchester County

Court (LaCava, J.). Petitioner was convicted, after a trial by jury, of several narcotics offenses

and sentenced, *inter alia*, to concurrent terms of imprisonment of twenty years to life (a sentence

which was later reduced to a determinate term of fifteen years), three indeterminate terms of

eight and one-third to twenty-five years, and a determinate term of one year. This petition

comes before me pursuant to an Order of Reference dated April 28, 2009. (Docket No. 12). For

the reasons set forth below, I respectfully recommend that this petition be **DENIED**.

## II. <u>BACKGROUND</u>[1]

_____

[1] Unless otherwise indicated, the information contained within this section is taken from Respondent's Affirmation in Opposition to Petition for Writ of *Habeas Corpus* (hereinafter "Resp't Aff.") (Docket No. 6) and the Brief for Respondent (hereinafter "Br. for Resp't") (attached to Resp't Mem. of Law & Exs. (hereinafter "Resp't Mem."), at Ex. 3 (Docket No. 7)). Unless otherwise indicated, all exhibits cited within this Report and Recommendation are attached to Resp't Mem. (Docket No. 7).

A.     **The Crime and Police Investigation**

The facts of the underlying criminal offense may be briefly summarized.  On September

7, 2001, a Westchester County police officer observed a Ford Thunderbird traveling at a high

rate of speed and failing to stay in the lane near the Mamaroneck Avenue exit of the Hutchinson

River Parkway in Westchester County, New York.  The officer pulled the vehicle over and

observed Petitioner sitting in the passenger seat, Euclides Cruz ("Cruz") sitting in the driver's

seat, and Orlando Mendez ("Mendez") and his two year-old daughter sitting in the backseat.

Cruz admitted he was the only licensed driver, but could not produce his driver's license, nor

could any occupant produce insurance or registration information for the vehicle.  While the

officer ran Cruz's pedigree information in his patrol car, Petitioner exited the vehicle,

approached the patrol car, and handed the officer some items.  The officer determined that the

material was irrelevant and requested Petitioner return to the vehicle.  Petitioner walked toward

the vehicle, briefly spoke to Cruz, and then fled on foot into the woods.  A search was conducted

but Petitioner was not found and arrested until September 18, 2002 – over one year later.

Police meanwhile detained the other occupants and impounded the vehicle.  An inventory

search of the vehicle revealed large quantities of narcotics.  It was later determined that the trunk

contained five kilograms of cocaine, 193 tablets of MDMA (Ecstasy), and over two ounces of

marihuana.

Petitioner was indicted on one count of criminal possession of a controlled substance in

the first degree, in violation of N.Y. Penal Law § 220.21(1);[2] three counts of criminal possession

---

[2] "A person is guilty of criminal possession of a controlled substance in the first degree
when he knowingly and unlawfully possesses . . . one or more preparations, compounds,
mixtures or substances containing a narcotic drug and said preparations, compounds, mixtures or
substances are of an aggregate weight of four ounces or more . . . ." N.Y. Penal Law §

2

of a controlled substance in the third degree, in violation of N.Y. Penal Law § 220.16(1), (6), and

(11);[3] and one count of criminal possession of marihuana in the fourth degree, in violation of

N.Y. Penal Law § 221.15.[4]  (Ex. 1).

**B.      Pre-Trial Hearings**

By pretrial omnibus motion, Petitioner moved to suppress all identification testimony and

the physical evidence seized from the vehicle.  The court conducted Mapp,[5] Wade,[6] and

Molineux[7]– Ventimiglia[8] hearings and the parties submitted written memoranda to the court

thereafter.  The hearing court then denied Petitioner's motions.

**C.      Trial and Sentencing**

At trial, both Cruz and Mendez testified against Petitioner.  The jury returned a verdict of

guilty on all counts of the indictment.  On June 12, 2003, Petitioner was sentenced to a term of

---

220.21(1), amended by 2004 N.Y. Sess. Laws ch. 738, § 22 (2004).

[3]

A person is guilty of criminal possession of a controlled substance in the third degree
when he knowingly and unlawfully possesses . . . a narcotic drug with intent to sell
it; or . . . a hallucinogenic substance with intent to sell it and said hallucinogenic
substance weighs one gram or more; or . . . a hallucinogenic substance and said
hallucinogenic substance weighs five grams or more . . . .

N.Y. Penal Law § 220.16(1), (6), (11).

[4] "A person is guilty of criminal possession of marihuana in the fourth degree when he
knowingly and unlawfully possesses one or more preparations, compounds, mixtures or
substances containing marihuana and the preparations, compounds, mixtures or substances are of
an aggregate weight of more than two ounces." N.Y. Penal Law § 221.15.

[5] Mapp v. Ohio, 367 U.S. 643 (1961).

[6] United States v. Wade, 388 U.S. 218 (1967).

[7] People v. Molineux, 168 N.Y. 264 (1901).

[8] People v. Ventimiglia, 52 N.Y.2d 350 (1981).

twenty years to life imprisonment on the first degree count; concurrent, indeterminate terms of eight and one-third to twenty-five years imprisonment on each of the three third degree counts; and a concurrent, determinate term of one year imprisonment on the fourth degree count.

**D.    Direct Appeal**

Petitioner, through his appellate counsel,[9] appealed his conviction to the New York State Appellate Division, Second Department, and raised the following claim:

> (1)    the hearing court erred in denying the motion to suppress physical evidence as fruit of an unlawful search and seizure of the vehicle.

(Ex. 2). Petitioner also submitted a supplemental *pro se* brief which raised several additional claims involving ineffective assistance of counsel, deprivation of the right to a fair trial, legally insufficient evidence, and excessive sentence. Specifically, Petitioner raised the following claims:

> (2)    ineffective assistance of counsel for counsel's failure "to discuss with defendant advisability of accepting offered plea bargain," (Pro Se Supplemental Br. (hereinafter "Pro Se Supp. Br."), at 17 (Ex. 4) (typeface altered from original));
>
> (3)    ineffective assistance of counsel for failure "prepare adequately for trial by neglecting to conduct necessary investigations," (id. (typeface altered from original));
>
> (4)    ineffective assistance of counsel for failure "to present evidence exculpatory . . . effectively in the hearing, and the trial proceeding," (id. (typeface altered from original));
>
> (5)    ineffective assistance of counsel for failure "to present . . . witnesses effectively in the hearing, and the trial proceeding," (id. (typeface altered from original));
>
> (6)    ineffective assistance of counsel for failure "to cure the prosecutor misconduct," (id. (typeface altered from original));
>
> (7)    ineffective assistance of counsel for "entering into a conflict of interest," (id. (typeface altered from original));
>
> (8)    ineffective assistance of counsel for "failure to present the theory of the defense[ ]," (id. at 21);

---

[9] Petitioner was represented by different counsel on appeal.

(9)     ineffective assistance of counsel for failure "to object [to the] . . . connection of the defendant with People's witnesses whom testified against defendant to escape to serve a sentence 15 years to life," (id.);

(10)    ineffective assistance of counsel for failure "to object the admissibility of the tainted photographics array," (id.);

(11)    ineffective assistance of counsel for failure "to object the admissibility of . . . corrupted identification," (id.);

(12)    ineffective assistance of counsel for failure "to object to the admissibility of . . . Cruz and Mendez identifying defendant as the person that had direct possession of the 'corpus deliti' [sic]," (id.);

(13)    ineffective assistance of counsel for failure "to object to the admissibility of improper bolstering testimony of police officers," (id.);

(14)    ineffective assistance of counsel for failure to request certain discovery material, (see id.);

(15)    deprivation of the right to a fair trial due to the prosecutor's failure to disclose certain discovery material, (see id. at 23);

(16)    deprivation of the right to a fair trial due to prosecutorial misconduct, (see id.);

(17)    deprivation of the right to a fair trial due to "the placing of defendant's character[ ] . . . evidence" into the trial, (id. (typeface altered from original));

(18)    legally insufficient evidence to support the conviction, (see id. at 28-31); and

(19)    excessive sentence, (id. at 28-33).

The Second Department affirmed the judgment in a written decision on January 17, 2006.

People v. Gonzalez, 810 N.Y.S.2d 87 (App. Div. 2006).  Petitioner sought leave to appeal to the

New York Court of Appeals and leave was denied on March 30, 2006.  People v. Gonzalez, 6

N.Y.3d 833 (2006).  Petitioner did not seek a writ of *certiorari* to the United States Supreme

Court.  (See Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State

Custody (hereinafter "Pet."), at 2 (unpaginated) (Docket No. 2)).

**E.     Re-Sentencing**

        Petitioner sought and received a hearing, pursuant to the Drug Law Reform Act, 2004

N.Y. Sess. Laws ch. 738, after which the trial court determined that it would re-sentence

Petitioner to a determinate term of fifteen years imprisonment along with a five year period of

post-release supervision on the first degree conviction.  (Ex. 7).  On direct appeal, appellate

5

counsel filed an <u>Anders</u>[10] brief, (Ex. 8), and Petitioner thereafter filed a *pro se* supplemental brief which argued:

> (1)    the re-sentence was unduly harsh in violation of the Fifth and Fourteenth Amendments.

(Ex. 10). The Second Department granted appellate counsel's <u>Anders</u> motion and appointed new counsel, (Ex. 12), whose subsequently filed memorandum raised the following claim:

> (2)    the re-sentence was excessive,

(Ex. 17). Only July 1, 2008, the Second Department held that the proposed re-sentence was not excessive and remitted the matter to the trial court. <u>People v. Gonzalez</u>, 859 N.Y.S.2d 569 (App. Div. 2008). The court then re-sentenced Petitioner in accordance with its 2006 Order on August 14, 2008. <u>See</u> <u>People v. Gonzalez</u>, 882 N.Y.S.2d 904, 904 (App. Div. 2009). The Second Department affirmed the re-sentence on July 28, 2009. <u>Id.</u> The record does not indicate whether Petitioner sought leave to appeal this decision to the New York Court of Appeals.

**F.    N.Y. Crim. Proc. Law § 440.10 Motion**

While the appeal of Petitioner's re-sentencing was still pending, Petitioner, proceeding *pro se*, moved before the trial court to set aside the judgment of his conviction pursuant to N.Y. Crim. Proc. Law § 440.10.[11] Petitioner raised only one claim:

> (1)    ineffective assistance of trial counsel for failure to inform Petitioner of a two year to life plea offer.[12]

---

[10] <u>Anders v. California</u>, 386 U.S. 738 (1967).

[11] "At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment . . . ." N.Y. Crim. Proc. Law § 440.10(1).

[12] As indicated above, this claim was also raised in Petitioner's supplemental *pro se* brief on direct appeal.

6

(C.P.L. § 440.10 Mot. (Ex. 13)). By written decision, the motion was denied on October 5,

2007. (Oct. 5, 2007 Decision & Order (Ex. 15)). The Second Department denied leave to appeal

on December 18, 2007. (Ex. 16).

**G.**   **_Habeas Corpus_ Proceedings**

On December 27, 2007,[13] Petitioner filed a petition for a writ of _habeas corpus_ whereby

he asserted each ground raised on direct appeal and in his § 440.10 motion.[14] (See Pet., at 4, 7-

10). Accordingly, Petitioner has raised the following claims:

> (1)   the hearing court erred in denying Petitioner's motion to suppress the physical evidence as fruit of an unlawful search and seizure of the vehicle, (see Br. for the Def.-Appellant (Ex. 2));
>
> (2)   ineffective assistance of trial counsel for counsel's failure "to discuss with defendant the advisability of accepting an offered plea bargain," (Pro Se Supp. Br., at 17 (typeface altered from original); see also C.P.L. § 440.10 Mot.);
>
> (3)   ineffective assistance of trial counsel for counsel's failure to "prepare adequately for trial by neglecting to conduct necessary investigations," (Pro Se Supp. Br., at 17 (typeface altered from original));
>
> (4)   ineffective assistance of trial counsel for counsel's failure "to present evidence exculpatory . . . effectively in the hearing, and the trial proceeding," (id. (typeface altered from original));
>
> (5)   ineffective assistance of trial counsel for counsel's failure "to present . . . witnesses effectively in the hearing, and the trial proceeding," (id. (typeface altered from original));
>
> (6)   ineffective assistance of trial counsel for counsel's failure "to cure the prosecutor misconduct," (id. (typeface altered from original));
>
> (7)   ineffective assistance of trial counsel for "entering into a conflict of interest," (id. (typeface altered from original));
>
> (8)   ineffective assistance of trial counsel for counsel's "failure to present the theory of the defense[ ]," (id. at 21);
>
> (9)   ineffective assistance of trial counsel for counsel's failure "to object . . . [to the] connection of the defendant with People's witnesses whom testified against defendant to escape to serve a sentence 15 years to life," (id.);
>
> (10)  ineffective assistance of trial counsel for counsel's failure "to object the

---

[13] The petition was timely filed. See 28 U.S.C. § 2244(d)(1)-(2).

[14] Petitioner does not include the claims raised on appeal of his re-sentence. (See Pet.)

admissibility of the tainted photographics array," (id.);

(11)    ineffective assistance of trial counsel for counsel's failure "to object the admissibility of . . . corrupted identification," (id.);

(12)    ineffective assistance of trial counsel for counsel's failure "to object to the admissibility of . . . Cruz and Mendez identifying defendant as the person that had direct possession of the 'corpus deliti' [sic]," (id.);

(13)    ineffective assistance of trial counsel for counsel's failure "to object to the admissibility of improper bolstering testimony of police officers," (id.);

(14)    ineffective assistance of trial counsel for counsel's failure to request certain discovery material, (see id.);

(15)    deprivation of the right to a fair trial due to the prosecutor's failure to disclose certain discovery material, (see id. at 23);

(16)    deprivation of the right to a fair trial due to prosecutorial misconduct, (see id.);

(17)    deprivation of the right to a fair trial due to "the placing of defendant's character[ ] . . . evidence" into the trial, (id. (typeface altered from original));

(18)    legally insufficient evidence to support the conviction, (see id. at 28-31); and

(19)    excessive sentence, (id. at 28-33)

On February 1, 2011, I issued an Order granting an evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2) and appointing counsel in accordance with Rule 8(c) of the Rules Governing § 2254 Cases in the District Courts. (Docket No. 25). The hearing was ordered for the limited purpose of resolving a conflict between Petitioner and his trial attorney concerning whether a certain plea offer identified in Claim 2 was conveyed to Petitioner. Respondent subsequently requested leave to file supplemental materials in opposition to Petitioner's claim, and I adjourned the hearing and entertained additional submissions from Respondent and from Petitioner. (Docket Nos. 26-31). As detailed below, on the basis of those submissions I have determined that Petitioner's Claim 2 should be denied without a hearing.[15]

### III. DISCUSSION

---

[15] Because I have determined that the evidentiary hearing for which counsel was appointed is no longer necessary, I have relieved counsel in an Order filed concurrently with this Report and Recommendation. Accordingly, Petitioner must hereafter proceed *pro se*.

## A.   **Applicable Law**

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614,

621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may

review the merits of a state criminal judgment in a *habeas corpus* action, the court must first

determine whether the petitioner has complied with the procedural requirements set forth in 28

U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court

must then determine the appropriate standard of review applicable to the petitioner's claim(s) in

accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas*

review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

### 1.   *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of

limitations.  See 28 U.S.C. § 2244(d).  The statute provides four different potential starting

points for the limitations period, and specifies that the latest of these shall apply.  See id. §

2244(d)(1).  Under the statute, the limitation period is tolled only during the pendency of a

properly filed application for State post-conviction relief, or other collateral review, with respect

to the judgment to be challenged by the petition.  See id. § 2244(d)(2).  The statute reads as

follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct
>> review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by

9

> State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted). The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing – a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

### 2.    *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented"). The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

        To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each

appropriate state court (including a state supreme court with powers of discretionary review),

thereby alerting that court to the federal nature of the claim," and thus "giving the State the

opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin

v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because

non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas

petition must put state courts on notice that they are to decide federal constitutional claims."

Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209,

221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the

factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be

"fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and

verse of the Constitution," in one of several ways:

11

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." Rhines v. Weber, 544 U.S. 269, 277 (2005); see 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.    *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

### 4.    *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**B.**   **Analysis of Petitioner's Claims**

    **1.**   ***Fourth Amendment Claim (Claim I)***[16]

---

[16] Petitioner's claims are addressed in the sequence set forth in Section II(G) above.

Petitioner argues that the hearing court erred in denying his motion to suppress the physical evidence obtained as fruit of an unlawful search and seizure of the vehicle. (See Br. for the Def.-Appellant, at 10-18).[17]   Respondent contends that this claim is not cognizable upon *habeas* review pursuant to the Stone v. Powell doctrine. (See Resp't Mem., at 2-3).

In Powell, the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the grounds that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 482 (1976); see also, e.g., Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim . . . , the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]").   Fourth Amendment claims may not be reviewed by this Court unless one of two narrow exceptions apply: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

Petitioner asserts that his Fourth Amendment claim could not be redressed because "[t]he

---

[17] In support of the claims raised in his *habeas* petition, Petitioner has attached the table of contents from his direct appeal briefs & § 440.10 motion papers to the petition. Accordingly, I cite to those original documents herein.

state courts provided no corrective procedures at all." (Traverse & Mem. of Law in Supp. of Pet'r Writ of Habeas Corpus Pet. (hereinafter "Traverse"), at 23 (Docket No. 10)). This argument is unfounded. The Second Circuit has expressly noted that "the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* . . . , as being facially adequate." Capellan, 975 F.2d at 70 n.1 (internal quotation marks and citation omitted).

Petitioner also asserts that "a hearing should have been held." (Traverse, at 23). To the extent that this may be liberally construed to argue that an unconscionable breakdown occurred, see Haines v. Kemer, 404 U.S. 519, 520-21 (1972) (per curiam) (*pro se* allegations contained in *habeas corpus* petitions should be liberally construed); Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted) (application submitted by *pro se* petitioner should be "read liberally and should be interpreted to raise the strongest arguments that [it] suggests"), such an argument is also unfounded. "An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim." Valtin v. Hollins, 248 F. Supp.2d 311, 317 (S.D.N.Y. 2003). Where a petitioner was provided "an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal review." Costello, 299 F.3d at 134. In this case, no breakdown in procedure occurred and, contrary to Petitioner's assertion, the claim was actually litigated in accordance to New York's criminal procedure law. Trial counsel moved to suppress the evidence through pretrial motion, a pretrial hearing was conducted, the parties submitted written memoranda after the hearing concluded, and the claim was raised on direct appeal. "[M]ere dissatisfaction or disagreement with the outcome of a suppression motion

16

is not sufficient to establish that an 'unconscionable breakdown' occurred in the existing process

in violation of the petitioner's Fourth Amendment rights." Cook v. Donnelly, 2009 WL 909637,

at *5 (W.D.N.Y. Mar. 31, 2009) (citing Capellan, 975 F.2d at 71).[18]  Accordingly, Petitioner's

claim must be denied.

### 2. *Right to Counsel Claims (Claims 2-14)*

Petitioner has raised several claims related to the alleged ineffective assistance provided

by his retained trial counsel.  For organizational purposes, I have grouped these claims into the

following three categories.  First, Petitioner argues he received constitutionally ineffective

assistance of counsel due to counsel's failure to communicate with Petitioner a two year to life

plea offer (Claim 2).  Second, Petitioner argues that his attorney held certain conflicts of interest

(Claim 7).  Third, Petitioner asserts a variety of miscellaneous ineffective assistance of counsel

claims that relate to counsel's performance (Claims 3-6 and 8-14).  Respondent contends that

each of the claims are without merit.  (See Resp't Mem. at 4-14).[19]

The Counsel Clause of the Sixth Amendment of the United States Constitution provides

that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his

defense."  U.S. Const. Amend. VI.  The Supreme Court has construed this clause to afford

---

[18] Copies of unreported cases cited herein will be mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

[19] I note that the Second Department denied these claims as "either unpreserved for appellate review or without merit."  Gonzalez, 810 N.Y.S.2d at 88.  The Second Circuit has made clear that such language does not rest upon a state procedural rule, thereby requiring a District Court to reach the merits of the claim upon *habeas* review.  Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 810-11 (2d Cir. 2000).  However, the Second Circuit has not yet conclusively held whether the AEDPA deferential, or else a *de novo*, standard of review applies.  See Shih Wei Su v. Filion, 335 F.3d 119, 126 n.3 (2d Cir. 2003).  The Court need not address this issue, however, because as discussed below, the claims fail even under the more favorable *de novo* standard.

criminal defendants the right to the *effective* assistance of counsel. See McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). A *habeas* petitioner's ineffective assistance of counsel claim will succeed on the merits if the petitioner proves (1) that counsel's representations "fell below an objective standard of reasonableness," as measured under "prevailing professional norms," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

*Habeas* petitioners bear the burden of proving both prongs of the Strickland test. He or she must therefore prove that his or her attorney's actions were objectively unreasonable as well as that he or she was prejudiced to the extent that there exists a reasonable probability that the result of the proceeding would have been different. Id. at 689, 693. To show that an attorney's conduct was unreasonable, the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Additionally, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. Because a petitioner may succeed only by proving both Strickland prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

a.   **Plea Bargain Claim (Claim 2)**

Petitioner asserts he was denied the effective assistance of counsel because his attorney failed to convey a plea offer of "two years to life." (See, e.g., Traverse, at 10). By affidavit submitted with his § 440.10 motion, Petitioner averred that his attorney "did not relay nor fully

advise[ ] me on whether the plea offer of 2 years to life sentence was in my best interests to accept it," that his attorney "never educated me of the comparative sentence exposure between standing trial and accepting the plea offer," and that "had I known that the 2 years to life plea offer was available to me during the pre-trial of my criminal proceedings, I would have, without any doubts, accepted it." (Ex. 13). I note that Petitioner has not raised an argument that counsel failed to communicate any other plea offer. Respondent contends, in part, that Petitioner's claim is contradicted by the record. (See Resp't Mem., at 5-7).

The trial court's written decision on Petitioner's motion to vacate the judgment of his conviction represents the last-reasoned state court decision to address this claim. See Ylst, 501 U.S. at 803. It is clear that the court denied the claim pursuant to N.Y. Crim. Proc. Law § 440.10(2)(a)[20] on the grounds that it was previously raised and determined on the merits on direct appeal.[21] (Oct. 5, 2007 Decision & Order, at 2-4). However, I do not find that a state court's reliance on § 440.10(2)(a) constitutes an "adequate" procedural ground that precludes this Court from *habeas* review. By the statute's own language, a prior decision on the claim must have already been made. See, e.g., Guzman v. Couture, 2003 WL 165746, at *11

---

[20] "[T]he court must deny a motion to vacate a judgment when . . . [t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal from the judgment." N.Y. Crim. Proc. Law § 440.10(2)(a).

[21] The opinion reads, in pertinent part:

> Defendant's motion is denied. Pursuant to CPL §440.10(2)(a), a court must deny a motion to vacate judgment when the issue raised upon the motion was previously determined on the merits on appeal. Here, defendant raised this same ineffective assistance of counsel claim in his *pro se* supplemental brief on appeal .
> . . .

(Oct. 5, 2007 Decision & Order, at 2).

19

(S.D.N.Y. Jan. 22, 2003) (internal quotation omitted) ("A dismissal under § 440.10(2)(a) is not based on any procedural default. To the contrary, it is premised on a prior decision."); see also Garner v. Superintendent of Upstate Corr. Facility, 2007 WL 2846907, at *20-21 & n.9 (N.D.N.Y. Sept. 26, 2007) (noting disagreement among courts within the Second Circuit and collecting cases). Accordingly, I review the claim as it was addressed in the prior decision, which as noted above, denied the claim in such a way as to require this Court's review of its merits.

An attorney's failure to communicate and advise a client adequately regarding the existence or the terms of a plea offer, or the maximum sentence faced if convicted after trial, may constitute ineffective assistance. See, e.g., Cullen v. United States, 194 F.3d 401, 404 (2d Cir. 1999) ("there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution"); United States v. Gordon, 156 F.3d 376, 380 (2d Cir. 1998) (per curiam) (internal quotation omitted) ("knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty"); Boria v. Keane, 99 F.3d 492, 496-97 (2d Cir. 1996) (quotation omitted) (emphasis in original) ("counsel may and *must* give the client *the benefit of counsel's professional advice*" as to the decision of whether or not to accept a plea offer); see also Hill v. Lockhart, 474 U.S. 52, 58 (1985) (Strickland analysis applies to such situations). To prevail on this ground upon *habeas* review, a petitioner "must show that (1) the attorney failed to communicate a plea offer or failed to provide adequate advice about the plea and sentencing exposure, and (2) there is a reasonable probability that but for the attorney's deficient performance, the defendant would have accepted the plea offer." Faulkenson v. Conway, 2007 WL 160926, at *11 (E.D.N.Y. Jan. 10, 2007) (citing Purdy v. United States, 208 F.3d 41, 49 (2d

Cir. 2000)).

This issue arises because the original transcript of pretrial proceedings on March 10,

2003, prepared by the court reporter and filed in connection with Petitioner's direct appeal,

indicates that Petitioner's attorney told the court, on the record but before a Spanish interpreter

was on hand to translate for Petitioner, that the state had previously offered Petitioner an

opportunity to plead guilty in exchange for a sentence of "two [years] to life." That transcript

reads as follows:

> MR: GOLDSTEIN [defense counsel]: Just so the record is clear - -
>
> THE COURT: Go ahead, Mr. Goldstein.
>
> MR. GOLDSTEIN: I had numerous conversations with Mr. Kennedy before we commenced this morning. I've also spoken to my client on a number of occasions and I want to place on the record the substance of all discussions, so there won't be misunderstanding later on with regard to plea offers and consequences of going ahead with the hearing.
>
> Mr. Kennedy advised me while the offer up until last week had been a plea *with a sentence of two to life*, assuming that that sentence would have been acceptable to the Court, because of certain factors which are really unrelated to the issues in this hearing, his office was prepared to offer Mr. Gonzalez a plea today with a sentence of four and a half years to life.
>
> I spoke - - Withdrawn. He also told me, if we went forward with the hearing, that the offer would be raised to seven to life and that that would be the offer unless and until it went to trial and there would be no way of doing any better.
>
> I have spoken to my client before today with regard to offers and I have spoken to him at least three times today. He tells me he is not interested in any plea offer and wants to go to trial.

(Mar. 10, 2002 [*sic*] Tr., at 3-5 (emphasis added) (Docket No. 15)).[22] Petitioner has steadfastly

maintained that no "two to life" offer was ever conveyed to him by his attorney, and that he

---

[22] This proceeding occurred on March 10, 2003, not 2002.

21

learned of this offer only upon reading the transcript in connection with this direct appeal. (See C.P.L. § 440.10 Mot., at 6; Pro Se Supp. Br., at 20). Thus, Petitioner argues his attorney failed to render effective assistance of counsel.

As noted above, on February 1, 2011, I scheduled an evidentiary hearing for the purpose of resolving the apparent conflict between attorney Goldstein's representation to the court – documented in the March 10, 2003 hearing transcript – that he had advised his client of the "two to life" offer, and Petitioner's contention that his attorney never conveyed such an offer. (Docket No. 25). Thereafter, Respondent requested and was granted leave to submit supplemental materials in opposition to the petition, centering on Respondent's contention that Petitioner's "two to life" claim was based upon an error in the March 10 transcript. (Docket Nos. 26-27).

Respondent filed a supplemental memorandum, supported by affidavits of the court reporter, his attorney, Mr. Goldstein, and the trial prosecutor, Kevin Kennedy, asserting that a "two to life" plea offer was never extended to Petitioner. (Docket No. 28). In her affidavit, the court reporter who transcribed the March 10 proceeding attests that, based upon a review of her original notes, "two to life" is a transcription error which should read "six to life." (Aff. of Ivy V. Stuckey ¶ 5 (attached to Resp't Supplemental Mem. of Law & Exs. (hereinafter "Resp't Supp. Mem."), at Ex. 1)).[23] Mr. Kennedy and Mr. Goldstein each attest to the fact that no offer

---

[23] Specifically, the affidavit states that,

I . . . checked my diskette that contains my transcriptions from that proceeding and discovered errors in the transcript previously prepared by me. First, the transcript should be dated March 10, 2003 [not 2002]. Second, on page four, I had typed that "the offer up until last week had been a plea with a sentence of two to life . . . ." It should actually read that "the offer up until last week had been a plea with a sentence of six to life . . . ."

involving a sentence of two years to life was ever made or communicated to defense counsel. (Aff. of Kevin Kennedy ¶ 6 (attached to Resp't Supp. Mem., at Ex. 2); Aff. of David L. Goldstein ¶ 6 (attached to Resp't Supp. Mem., at Ex. 3)).[24]  By letter dated July 7, 2011, Petitioner pointed out that Respondent had previously argued (based on the March 10 transcript) that a "two to life" offer had been rejected by Petitioner, and that Respondent has never before suggested that the transcript was in error, and urged me to proceed with an evidentiary hearing. (Docket No. 30).

I agree with Petitioner insofar as he criticizes Respondent for waiting until now – despite having long been on notice – to seek correction of the transcript.  However, I do not agree that an evidentiary hearing is warranted.  Individuals with personal knowledge of the March 10, 2003 proceeding have now provided affidavits confirming that a "two to life" offer was never actually discussed.  Petitioner himself cannot and does not claim to have personal knowledge of what was stated (in English) before the Spanish interpreter arrived; his claim was based entirely upon his discovery of the "two to life" reference in the transcript after the fact.  Petitioner has not identified any potential witness who is in a position to contradict the consensus of the court reporter, the defense attorney, and the prosecutor as set forth in their affidavits.  There is no longer any conflict between Petitioner and Mr. Goldstein; both agree that no "two to life" offer was ever conveyed to Petitioner.  Accordingly, there is no need to conduct an evidentiary hearing on this claim.

_____

(Aff. of Ivy V. Stuckey ¶ 5).

[24] I note that Petitioner's defense attorney confirms that he is fluent in Spanish and communicated with Petitioner in that language.  (Aff. of David L. Goldstein ¶ 3).

Further, because Petitioner cannot show that a "two to life" offer was ever extended by Respondent, he cannot show that his attorney rendered ineffective assistance by failing to communicate such an offer to him.[25] The claim must therefore be denied.

### b.    Conflict of Interest Claim (Claim 7)

Petitioner asserts he was deprived of his right to counsel because of his attorney's conflicts of interest. (Pro Se Supp. Br., at 17). Specifically, Petitioner states that (1) it was counsel's decision to go trial in order to bill more hours and collect a larger fee, (see id. at 18 ("[d]efendant counsel decided [to] go to trial to secure the total paid in his agreement fee")); and (2) counsel continued to represent Petitioner despite Petitioner informing the court that he no longer wanted his representation, (see id. (stating Petitioner "was clear [to the court], 'Yes, I don't want him to represent me because we're not ready'")).

The Sixth Amendment right to counsel includes the right to conflict-free counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); Strickland, 466 U.S. at 692. An actual conflict of interest exists where "during the course of the representation, the attorney's and defendant's interests 'diverge with respect to a material factual or legal issue or to a course of action.'" Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler v. Sullivan, 446 U.S. 335, 356

---

[25] I note that a sentence of two years to life would have been an unlawful sentence under New York law. See N.Y. Crim. Proc. Law § 220.21(5)(I), amended by 2004 N.Y. Sess. Laws ch. 738, § 16 (2004) ("[w]here the indictment charges one of the class A-I felonies defined in article two hundred twenty of the penal law . . . then any plea of guilty entered . . . must be or must include at least a plea of guilty of class A-II felony"); N.Y. Penal Law § 220.21 (classifying the offense of criminal possession of a controlled substance in the first degree as a class A-I felony); id. § 70.00(3)(a)(ii) (minimum sentence for a class A-II felony "shall not be less than three years"). The fact that a "two to life" sentence could not lawfully have been entered by the court further supports Respondent's contention that Petitioner was never offered such a sentence, and that the "two to life" reference in the March 10 transcript was a transcription error.

24

n.3 (1980)). Proof of an actual conflict of interest creates a presumption of prejudice, which alleviates the defendant's burden of proving <u>Strickland</u>'s second prong. <u>E.g.</u>, <u>United States v. White</u>, 174 F.3d 290, 295 (2d Cir. 1999). The defendant must show that some decision was made because of the existence of the conflict. However, the defendant need not also show that this decision changed the result of the proceeding. <u>See</u> <u>Cuyler</u>, 446 U.S. at 349, 350 ("until a defendant shows that his counsel actively represented conflicting interests," or otherwise engaged in a "lapse in representation," "he has not established the constitutional predicate for his claim of ineffective assistance"); <u>United States v. Malpiedi</u>, 62 F.3d 465, 469 (2d Cir. 1995) (internal quotation marks and citation omitted) ("a defendant must demonstrate that some plausible alternative strategy or tactic might have been pursued, and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests"). Actual conflicts require automatic reversal. <u>See</u> <u>Cuyler</u>, 446 U.S. at 349-50. In contrast, a potential conflict of interest requires proof of both <u>Strickland</u> prongs. <u>See</u> <u>Winkler</u>, 7 F.3d at 307.

      In this case, Petitioner's filings may be liberally construed to argue that an actual conflict of interest existed when his attorney allegedly made the decision to pursue trial and forego plea bargaining without Petitioner's consent in order to bill more hours to his client. It is well-settled that the decision of whether to plead guilty or pursue trial belongs to the criminal defendant alone. <u>Florida v. Nixon</u>, 543 U.S. 175, 187 (2004). Accordingly, if the decision to reject plea offers and proceed to trial was made by the attorney and not Petitioner, such a decision would constitute a divergence of interests and warrant reversal. However, the record in this case reflects that this did not occur. At several times during the proceedings – when both Petitioner and the Spanish interpreter were present – the parties discussed the several plea offers that were

made to Petitioner.  (See, e.g., Apr. 16, 2003 Tr., at 7-14 (Docket No. 18); June 12, 2003 Tr., at

15 (Docket No. 23)).  Additionally, at sentencing, a statement by Petitioner that was read into the

record acknowledged that his attorney had relayed at least one plea offer.  However, Petitioner

insisted that he was innocent and therefore questioned the "ethic[s]" of his attorney's decision

"to deliver an offer to an innocent person." (June 12, 2003 Tr., at 12).  Petitioner has simply

offered no support for his assertion that the decision to proceed to trial was not his own.  See

Wood v. Bartholomew, 516 U.S. 1, 8 (1995) (per curiam) (noting that federal courts should not

grant "habeas relief on the basis of little more than speculation with slight support"); see also,

e.g., McLean v. Green, 2009 WL 4778824, at *15 (E.D.N.Y. Apr. 15, 2009), Report &

Recommendation adopted, 2009 WL 4854512 (E.D.N.Y. Dec. 9, 2009) ("conclusory assertions,

absent additional specific support, are insufficient to overcome the strong presumption that

counsel acted reasonably); Williams v. Bennett, 2003 WL 21143070, at *8 n.13 (E.D.N.Y. Jan.

3, 2003) (quoting Loving v. O'Keefe, 960 F. Supp. 46, 51 (S.D.N.Y. 1997) and citing Fleming v.

United States, 146 F.3d 88, 90 (2d Cir. 1998) (per curiam)) ("'conclusory allegation[s] without

specific factual allegations supporting the conclusion[s] [are] insufficient for habeas corpus

relief,' . . . even where a petitioner is proceeding *pro se*").  "[T]he fact that a lawyer is paid for

the representation is not a basis for a conflict of interest claim in the absence of some other

factor." Mittal v. United States, 471 F. Supp.2d 370, 378 (S.D.N.Y. 2006) (citing Winkler, 7

F.3d at 307-08).  Accordingly, Petitioner has not established that his attorney held an actual

conflict of interest and therefore this claim must be denied.

      Petitioner also asserts that a conflict existed when his attorney continued to represent him

despite Petitioner's attempt to fire him.  This argument is also meritless.  First, I note that

Petitioner's attorney was retained and not appointed.  (See Pro Se Supp. Br., at 18).  It is not

26

clear why Petitioner simply did not fire him at will and retain the services of another lawyer of choice.[26] See, e.g., United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006) (an element of the Sixth Amendment's right to counsel "is the right of a defendant who does not require appointed counsel to choose who will represent him"). Second, it is clear from Petitioner's own statement that he sought to fire his attorney solely in order to delay the start of trial. (See Pro Se Supp. Br., at 18 ("I don't want him to represent me because we're not ready"); Apr. 14, 2003 Tr., at 20 (Docket No. 17) (same); see also infra Section III(B)(2)(c)(i)). A court's refusal to entertain such an attempt to "manipulate the judicial process" does not violate a criminal defendant's Sixth Amendment rights. United States v. Arena, 180 F.3d 380, 398 (2d Cir. 1999). The claim must be denied.

### c.   <u>Miscellaneous Ineffective Assistance of Counsel Claims</u>

#### i.   <u>*Failure to Investigate and Prepare for Trial (Claim 3)*</u>

Petitioner asserts that his attorney "failed to prepare adequately for trial by neglecting to conduct necessary investigations." (Pro Se Supp. Br., at 17 (typeface altered from original)). It is true that counsel has a constitutional "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. However, Petitioner fails to establish Strickland's first prong. Although he states that his attorney's "fail[ure] to investigate . . . is outstanding in the record of the trial," (Pro Se Supp. Br., at 21 (citing "HTVD: 10, 11, 12, 19 and 20")), his citations to the transcripts do not identify such

---

[26] There is no indication within Petitioner's filings or the state transcripts that Petitioner requested leave to proceed *pro se*.

a failure.[27]  (See Apr. 14, 2003 Tr., at 10-20).

The transcripts cited by Petitioner reveal his attempt to delay the start of trial.  On the eve of jury selection, counsel requested leave to serve a late notice of alibi and also requested that the proceedings be adjourned in order to investigate the ownership of the Thunderbird.  Counsel acknowledged that his requests came late but explained that his client just informed him about this potential evidence.  Petitioner has not disputed this assertion.[28]  The court denied the requests after finding them to constitute "a dilatory tactic" by Petitioner.  (Apr. 14, 2003 Tr., at 21).  Accordingly, counsel's performance cannot be considered deficient.  See, e.g., Batchilly v. Nance, 2010 WL 1253921, at *37 (S.D.N.Y. Apr. 2, 2010), Report & Recommendation adopted, 2011 WL 1226260 (S.D.N.Y. Mar. 30, 2011) (collecting cases and determining that counsel was not ineffective for failing to investigate alibi where client neglected to inform him until eve of trial).  In addition, although Petitioner summarily declared to the court that his attorney was not prepared to proceed to trial, counsel stated on the record that his client was wrong.  The court agreed with counsel and found that his late requests were simply made at the behest of Petitioner.  (See Apr. 14, 2003 Tr., at 18-20).

Petitioner also fails to establish Strickland's second prong.  He makes no argument to explain why, if such evidence did in fact exist, he failed to tell his attorney about it until the jury was about to be selected.  See Taylor v. Illinois, 484 U.S. 400, 414 (1988) (it is "reasonable to presume that there is something suspect about a defense witness who is not identified until the

---

[27] The April 14, 2003 transcripts are the only volume containing the caption "Hearings & Trial Voir Dire."  Petitioner indicates that "HTVD" refers to this title.  (Pro Se Supp. Br., at 13).

[28] In addition, I note that Petitioner does not argue that the court deprived him of a constitutional right in denying his attorney's requests.

11th hour has passed"). Nor does he explain what the alleged evidence would actually reveal. See, e.g., Slevin v. United States, 1999 WL 549010, at *5 (S.D.N.Y. July 28, 1999) (ineffective assistance of counsel claim denied where petitioner "has not explained how further discovery, additional research or increased communication would have uncovered facts or arguments to support a successful defense"); Matura v. United States, 875 F. Supp. 235, 238 (S.D.N.Y. 1995) (ineffective assistance of counsel claim denied where petitioner did not explain "how such investigation, consideration, or presentation would have helped to cast doubt on petitioner's guilt"). Accordingly, Petitioner cannot establish either prong of Strickland and therefore this claim must be denied.

### ii. *Failure to Present Exculpatory Evidence (Claim 4)*

Petitioner asserts that his attorney "failed to . . . present evidence exculpatory . . . in the hearing, and the trial proceeding." (Pro Se Supp. Br., at 17 (typeface altered from original); see also id. at 20 (stating that counsel was deficient for "confront[ing] a trial without any material and exculpatory defense"); id. at 22 (internal quotation marks omitted) (concluding that any proper conduct by counsel should not "excuse [counsel's] failure to investigate a defense that may have led to the complete exoneration of his client")). Under Strickland, counsel may make "[a] reasonable decision to forego investigation [when] based on a reasoned judgment that such investigation would be fruitless, wasteful, or even counterproductive." Espinal v. Bennett, 588 F. Supp.2d 388, 399 (E.D.N.Y. 2008). However, "a failure to conduct reasonable investigation into possible alibi evidence, in the absence of such a reasonable explanation, falls below the standard of effective representation required by Strickland." Id.

In this case, Petitioner has not specifically identified what alleged exculpatory evidence existed or what potential defense was available but not pursued by his attorney. To the extent

that his brief may be liberally read to argue that this evidence consisted of an alleged alibi

witness and ownership information for the Thunderbird, (see Pro Se Supp. Br., at 12-13), as

discussed above, he has failed to establish either prong of Strickland with respect to his claim

that counsel was ineffective for failing to investigate this information.  This claim must be

denied.

### iii. *Failure to Present Witnesses Effectively (Claim 5)*

Petitioner asserts that his attorney "failed to . . . present . . . witnesses effectively in the

hearing, and the trial proceeding."  (Pro Se Supp. Br., at 17 (typeface altered from original)).

Petitioner has entirely failed to explain what he means by this conclusory assertion or how it

prejudiced his trial.  For the reasons stated above, this unsupported claim must be denied.[29]

### iv. *Failure to Present the Theory of the Defense (Claim 8)*

Petitioner asserts that "[c]ounsel's failure to present the theory of the defense[ ] . . .

constituted ineffective assistance of counsel."  (Pro Se Supp. Br., at 21).  Petitioner has failed to

describe what this failure consisted of or explain how it prejudiced his trial.  For the reasons

stated above, this claim must be denied.[30]

---

[29] Although it is not the job of the Court to invent arguments on behalf of *pro se* petitioners, see Michael v. I.N.S., 48 F.3d 657, 668 (2d Cir. 1995) ("[c]ourts should be liberal in construing *pro se* papers, but should not invent them"), I take note that the defense did not call any witnesses in either the pretrial hearing or at trial.  If this fact is what Petitioner is referring to, the claim must be denied for the same reasons stated above.  Petitioner has failed to demonstrate how the decision not to call witnesses constituted deficient conduct, whether any relevant witnesses were even available to testify, and how the outcome of the proceedings would have been different.  See also, e.g., United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (attorney's decision "whether to call specific witnesses . . . is ordinarily not viewed as a lapse in professional representation").

[30] In any event, I note that the transcripts clearly reflect that defense counsel pursued a theory of mistaken identity by the police officer and false testimony by Cruz and Mendez.

### v.   *Failure to Show the Bias of Witnesses (Claim 9)*

Petitioner asserts that counsel was ineffective when he "failed to object . . . [to the] connection of the defendant with People's witness whom testified against defendant to escape to serve a sentence 15 years to life." (Pro Se Supp. Br., at 21). This claim may be liberally construed to argue that counsel was ineffective for failing to adequately portray the biases of Cruz and Mendez to the jury. However, such a claim is contradicted by the record. Defense counsel cross-examined the witnesses about cooperation agreements they received in exchange for testifying, and also argued this point in his opening and closing remarks.[31]  (See Apr. 24, 2003 Tr., at 33-37 (Docket No. 22); Apr. 25, 2003 Tr., at 282-91 (Docket No. 22); Apr. 28, 2003 Tr., at 428-32 (Docket No. 22); Apr 29, 2003 Tr., at 465-506, 520-53 (Docket No. 22); Apr. 30, 2003 Tr., at 611-12, 624–39 (Docket No. 22)).  The claim must be denied.

### vi.   *Failure to Object to Admission of Photo Array (Claim 10)*

Petitioner asserts that counsel was ineffective when he "failed to object the admissibility of the tainted photographics array." (Pro Se Supp. Br., at 21).  However, no photograph array was introduced at trial.  To the extent that photo arrays were presented to Cruz, Mendez, and the officer who initially stopped the Thunderbird, I note that a pretrial hearing was conducted to determine if those prior identifications were unduly suggestive. (See, e.g., Mar. 27, 2003 Tr., at 97-98 (Docket No. 16) (summarizing argument); see also Apr. 14, 2003 Tr., at 3-5 (decision from bench)).  Any contention by Petitioner that counsel was deficient for failing to object to the

---

[31] In exchange for their cooperation, the prosecutor would agree to a five year sentence for Mendez and a three and one-third to ten year sentence for Cruz. (See Apr. 30, 2003 Tr., at 671-72) (Docket No. 22)).  The deals were apparently also contingent upon the witnesses' abilities to refrain from criminal activity in the interim. (See Apr. 29, 2003 Tr., at 481 (Docket No. 22)).

photos' admissions during the pretrial hearing is simply illogical.  The claim must be denied.

### vii.  *Failure to Object to Identifications (Claim 11)*

Petitioner asserts that counsel was ineffective when he "failed to object admissibility of . . . corrupted identification." (Pro Se Supp. Br., at 21).  It is not clear which identification Petitioner is referring to.  However, as discussed above, the record of the pretrial hearing shows that defense counsel argued that the prior identifications by the police officer, Cruz, and Mendez were unduly suggestive.  Further, the trial transcripts clearly reveal counsel's attempt to portray the police officer's identification of Petitioner as the fleeing passenger as mistaken, and the testimony of Cruz and Mendez as incredible.  Counsel's performance was accordingly not unreasonable and therefore this claim must be denied.

### viii.  *Failure to Object to Testimony Identifying Petitioner as the Person in Direct Possession of the Narcotics (Claim 12)*

Petitioner asserts that counsel was ineffective when he "failed to object to the admissibility of . . . Cruz and Mendez identifying defendant as the person that had direct possession of the 'corpus deliti' [*sic*]." (Pro Se Supp. Br., at 21).  Both Cruz and Mendez testified for the State that the narcotics found in the trunk of the Thunderbird were Petitioner's. As discussed above, defense counsel attempted to suppress their identifications pretrial, and also argued to the jury that the witnesses were biased and their testimonies incredible.  A review of the transcripts reveals that counsel made strong arguments and effectively cross-examined these witnesses.  Accordingly, counsel did not render ineffective assistance and therefore this claim must be denied.

### ix.  *Failure to Object to Improper Bolstering (Claim 13)*

Petitioner asserts that counsel was ineffective when he "failed to object to the

32

admissibility of improper bolstering testimony of police officers." (Pro Se Supp. Br., at 21). This claim may be liberally construed to argue that the prosecutor improperly called Cruz and Mendez to testify in order to provide additional support to the officer's identification of Petitioner as the fleeing passenger. However, such a bolstering claim is not cognizable upon *habeas* review. "Under New York law, bolstering is derived from People v. Trowbridge, 305 N.Y. 471 (1953), that it is error to permit an identification made by one witness to be corroborated by the testimony of another witness who merely testifies that the identification occurred." Diaz v. Greiner, 110 F. Supp.2d 225, 234 (S.D.N.Y. 2000) (internal quotation omitted). Because the claim arises purely under state law, "[b]olstering claims have been (expressly) held not to be cognizable on federal habeas review." Id.; see also, e.g., Kanani v. Phillips, 2004 WL 2296128, at *21 (S.D.N.Y. Oct. 13, 2004) (collecting cases and stating that "[t]he rule forbidding 'bolstering' is a state law standard, and a claim that a witness's testimony constituted improper bolstering does not state a federal constitutional claim cognizable on habeas corpus"); Vega v. Berry, 1991 WL 73847, at *2 (S.D.N.Y. Apr. 29, 1991) ("[a]lthough bolstering is a practice prohibited in various states, including New York, the practice is not forbidden by the Federal Rules of Evidence and is not sufficiently prejudicial to deprive a defendant of his due process right to a fair trial").[32] Accordingly, this claim must be denied.

### x. *Failure to Request Discovery Materials (Claim 14)*

Petitioner asserts that counsel was ineffective for failing to request certain discovery

---

[32] In any event I note that the testimonies of Cruz and Mendez do not appear to constitute bolstering under New York's standard. Their testimonies were not admitted *solely* to corroborate the police officer's identification of Petitioner as the fleeing passenger. Rather, they also established essential elements of the charged offenses that could not have been offered by other witnesses – namely, that Petitioner placed the drugs into the trunk, knew the drugs were there, and intended to sell them.

materials. Specifically, Petitioner alleges that counsel failed to (1) "request the tape P.A. system of Mr. Smith, police officer," and (2) "request the summon for the violation of traffic given to Mr. Cruz." (Pro Se Supp. Br., at 21).

The first argument may be liberally construed to argue that the tape of a radio transmission made by the police officer after Petitioner fled into the woods was not produced. (See Mar. 10, 2003 Tr., at 48). Instead, Petitioner was provided a written statement of the transmission during pretrial discovery. (See Apr. 24, 2003 Tr., at 118 (noting that a radio transmission made by the police officer was produced to defense counsel during discovery in the form of "a verbal report which was reduced to writing"); see also Apr. 25, 2003 Tr., at 197-98). Petitioner provides no indication that the tape would show anything different than the transcript.[33] He also fails to explain how the result of the proceeding would have been different had the actual tape been produced.

The second argument may be liberally construed to argue that his attorney was deficient for failing to request a traffic summons given to Cruz, the driver of the Thunderbird.[34] (See Mar. 13, 2003 Tr., at 151). Again, however, Petitioner has failed to show how doing so would have changed the result of the proceeding. As indicated above, counsel already cross-examined Cruz about his cooperation agreement in order to portray his bias. Even if the forgiveness of a traffic

---

[33] I note that a review of the transcripts indicates that there was some question on cross-examination as to whether the police officer stated he saw Petitioner jump out of the car and flee, or whether he stated Petitioner was already outside the car when he fled. (See Mar. 13, 2003 Tr., at 184 (Docket No. 15)). However, even if this minor inconsistent statement is made more evident by the actual tape, Petitioner cannot establish the second prong of Strickland. There is no reasonable probability that this inconsistency would have discredited the officer enough to have changed the result of the hearing or trial.

[34] I note that although Respondent contends no such summons was ever issued to Cruz, (Resp't Mem., at 21), the police officer testified otherwise, (Mar. 13, 2003 Tr., at 151).

ticket was also a part of this deal, it is not reasonably probable the result of the trial would have been different had this information been disclosed.

Accordingly, Claim 14 must be denied.

### xi.    *Failure to Object to Prosecutorial Misconduct (Claim 6)*

Petitioner asserts that "trial counsel rendered ineffective assistance because . . . [he] failed . . . to object, to cure the prosecutor misconduct." (Pro Se Supp. Br., at 17 (typeface altered from original)). Specifically, Petitioner argues that counsel "failed to object to prosecutor remark and characterization during summation." (Id. at 21-22). Petitioner contends this remark was an improper comment on his burden of proof at trial:

> Here, after the prosecutor suggested a shifting of the burden of proof to the defendant by advising the jury to hold the defendant to the same standard of proof. In the summation the prosecutor then advised the jury that they should want the defendant to come forward and tell his side. The defense objected twice and was overruled twice.

(Id. at 25). In addition, Petitioner states the prosecutor's "improper characterization in the summation of defense counsel's arguments will also require a reversal of a conviction." (Id. at 26). In this respect, Petitioner specifically states that the prosecutor's improper comments did not mischaracterize the evidence at trial, but rather were personal attacks on defense counsel. (Id. ("[t]hese comments were not to the evidence but rather improper comments on defense counsel")).

The Fifth Amendment prohibits a prosecutor from suggesting to the jury that "'it may treat the defendant's silence as substantive evidence of guilt.'" United States v. Robinson, 485 U.S. 25, 32 (1988) (quoting Baxter v. Palmigiano, 425 U.S. 308, 319 (1976)); see also Griffin v. California, 380 U.S. 609, 614 (1965). However, not all prosecutorial comments on the defendant's silence violate the Constitution. "[A] particular comment must be viewed in the

35

context in which it is said." <u>Van Stuyvesant v. Conway</u>, 2007 WL 2584775, at *30 (S.D.N.Y. Sept. 7, 2007) (citing <u>Robinson</u>, 485 U.S. at 33). "To prove that a comment violates the rule, a petitioner must establish that the language used was manifestly intended or of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." <u>Id.</u> (internal quotation marks and citation omitted).

A criminal defendant also has a due process right to a fair trial, which may be violated through egregious statements made by the prosecutor if those statements "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Darden v. Wainwright</u>, 477 U.S. 168, 182 (1986); <u>see also, e.g.</u>, <u>United States v. LaMorte</u>, 950 F.2d 80, 83 (2d Cir. 1991) (internal citations omitted) ("[i]n evaluating whether allegedly improper comments by the prosecutor are grounds for reversal, the fundamental question is whether, if there was misconduct, it caused substantial prejudice to the defendant, thereby depriving him of his right to a fair trial"). The determination of whether due process was denied therefore rests upon "the fairness of the trial, not the culpability of the prosecutor." <u>Smith</u>, 455 U.S. at 219. To determine whether substantial prejudice was caused by the prosecutor's remarks, "the Second Circuit has established a three-factor test considering (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the improper statements." <u>Moore v. Warden, Southport Corr. Facility</u>, 380 F. Supp.2d 321, 330 (S.D.N.Y. 2005) (citing <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990)).

In this case, Petitioner fails to state which of the prosecutor's statements was allegedly improper. Nonetheless, a review of the summation reveals that the prosecutor did not comment on Petitioner's decision not to testify, and did not improperly comment on defense counsel. (<u>See</u> Apr. 30, 2003 Tr., at 651-86). To the extent that the prosecutor used defense counsel as an

36

example to show that everyone at some point does "stupid" things, (id. at 673), such a comment

was harmless. See, e.g., Miller v. Smith, 2010 WL 4961666, at *8 (E.D.N.Y. Dec. 1, 2010)

(collecting cases and holding prosecutor's antics, while unnecessarily theatrical, were mild and

not prejudicial). Accordingly, because Petitioner cannot establish that the prosecutor committed

misconduct, his contention that counsel's performance was deficient for failure to object to it is

baseless. Moreover, Petitioner cannot show any resulting prejudice. The claim must be denied.

**3.** ***Fair Trial Claims (Claims 15-17)***

      **a.**     **Failure to Disclose Discovery Material (Claim 15)**

Petitioner asserts he was deprived of his right to a fair trial due to the prosecutor's failure

"to make discovery and Rosario material available to the defendant, mandated by law and that

was requested by jury." (Pro Se Supp. Br., at 23 (typeface altered from original)). Specifically,

he states that the prosecutor failed to disclose:

(a)      "the statement of Cruz sent to District Attorney,"
(b)      "the tape of the P.A. system to verify the said in such tape by P.O. Smith,"
(c)      "the agreement between the prosecutor and the witness Cruz that the People would recommend the minimum sentence on the witness's unrelated pending charge in exchange for favorable testimony in this case," and
(d)      "the copies of summon or ticket of violations against Cruz by P.O. Smith."

(Id. at 23-24). Respondent contends these arguments fail to state a federal question necessary for

*habeas* review and, in any event, are meritless. (See Resp't Mem., at 17-24).

Petitioner's supplemental brief on direct appeal argued that the failure to disclose this

information constituted violations of the doctrine announced in People v. Rosario, 9 N.Y.2d 286

(1961). Violations of Rosario arise exclusively under state law and a federal *habeas* court must

deny such claims for failing to invoke a federal question. 28 U.S.C. § 2254(a); Coleman, 501

U.S. at 729; Wainwright v. Sykes, 433 U.S. 72, 81 (1977); see, e.g., Green v. Artuz, 990 F. Supp.

267, 274 (S.D.N.Y. 1998) ("the failure to turn over Rosario material is not a basis for federal

habeas relief as the Rosario rule is purely one of a state law").  Nevertheless, Petitioner also cited

certain state caselaw in his brief which analyzed the claims both in terms of Brady v. Maryland,

373 U.S. 83 (1963) as well as Rosario.  (See Pro Se Supp. Br., at 23-24 (citing People v. Perez,

65 N.Y.2d 154 (1985); People v. Cwikla, 46 N.Y.2d 434 (1979); People v. Consolazio, 40

N.Y.2d 446 (1976))).  Because Petitioner's exhausted arguments relied in part on state cases

employing federal constitutional analysis, the federal nature of the arguments has been fairly

presented to the state courts.  See Daye, 696 F.2d at 194.  Accordingly, I address his arguments

in terms of Brady.

     Brady charges prosecutors with a continuing duty to disclose exculpatory and

impeachment evidence where that evidence is material either to guilt or punishment.  Brady, 373

U.S. at 87; see also United States v. Bagley, 473 U.S. 667, 676 (1985) (duty encompasses both

impeachment and exculpatory evidence).  The evidence is material "if there is a reasonable

probability that, had the evidence been disclosed to the defense, the result of the proceeding

would have been different."  Bagley, 473 U.S. at 682.  However,

> The question is not whether the defendant would more likely than not have received
> a different verdict with the evidence, but whether in its absence he received a fair
> trial, understood as a trial resulting in a verdict worthy of confidence.  A "reasonable
> probability" of a different result is accordingly shown when the government's
> evidentiary suppression "undermines confidence in the outcome of the trial."

Kyles v. Whitley, 514 U.S. 419, 434 (1995) (quoting Bagley, 473 U.S. at 678).  The prosecutor's

duty to disclose also applies to information known only to police.  "In order to comply with

Brady, therefore, 'the individual prosecutor has a duty to learn of any favorable evidence known

to the others acting on the government's behalf . . . including the police.'"  Strickler v. Greene,

527 U.S. 263, 281 (1999) (quoting Kyles, 514 U.S. at 437).  Thus, "[t]here are three components

of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." Id. at 281-82.

### i.   *Letter From Cruz to Prosecutor (Claim 15(a))*

Cruz sent his own attorney a letter incriminating Petitioner, which his attorney thereafter sent to the prosecutor in furtherance of Cruz's plea negotiations. (See Apr. 28, 2003 Tr., at 431-49). The prosecutor acknowledged a discovery oversight and turned the letter over to Petitioner's attorney after cross-examination of Cruz had already started. Nonetheless, the late disclosure of this letter did not violate Brady. "With respect to *when* the prosecution must make a disclosure required by Brady, the law . . . appears to be settled. Brady material must be disclosed in time for its effective use at trial." United States v. Coppa, 267 F.3d 132, 135 (2d Cir. 2001) (emphasis in original). In this case, a review of the transcripts reveals that defense counsel actually and effectively utilized the letter in his cross-examination of Cruz. (See Apr. 29, 2003 Tr., at 466-506, 520-23). Counsel was already aware of the existence of the cooperation agreement and had already questioned Cruz about this in an attempt to discredit him. His incorporation of the letter into his cross-exam aligned effectively with this original strategy. The letter was written while Cruz was remanded without bail and before discussions with the district attorney's office began. However, after the letter was written, a bail package was set which Cruz was able to meet. Through cross-examination, defense counsel insinuated that bail was reduced at the behest of the prosecution, and attempted to portray Cruz's bias by questioning him about his motives to escape a lengthy jail sentence as well as to make bail.

Additionally, Petitioner fails to assert how he was actually prejudiced by such late disclosure. There is no indication that counsel's earlier use of the letter would have allowed him

39

to more effectively structure his cross-examination.  The evidence of guilt was simply too

weighty, and the substance of the letter not sufficiently material, for the lateness of this

disclosure to have undermined the confidence in the verdict.  See, e.g., Graham v. Ricks, 2004

WL 768579, at *7 (N.D.N.Y. Apr. 7, 2004) (disclosure of rap sheet in time for cross-

examination and use of material in order to impeach credibility of witness was effective use of

material and therefore did not violate Brady); Cheng v. Greiner, 2003 WL 22801348, at *6

(S.D.N.Y. Nov. 25, 2003) (no prejudice to petitioner from late disclosure of insignificant

material where evidence of guilt was overwhelming).  Accordingly, Petitioner cannot establish a

violation of Brady and therefore this aspect of Claim 15 must be denied.

           **ii.**       ***Physical Tape of Police Officer's Radio Transmission (Claim 15(b))***

Petitioner asserts the State's failure to turn over the physical tape of the radio

transmission that the police officer made after Petitioner fled the traffic stop deprived him of a

fair trial.  As discussed above, Petitioner received the written form of this transmission prior to

trial.  Respondent states that the actual tape no longer existed at time of trial, and Petitioner has

failed to show that this contention is false.  (See Resp't Mem., at 20).  Accordingly, Petitioner

has failed to demonstrate that the prosecution suppressed this material in violation of Brady.

See, e.g., Green v. Walsh, 2006 WL 2389306, at *19 (S.D.N.Y. Aug. 17, 2006) ("[i]n a habeas

proceeding, it is the petitioner's burden to demonstrate that the [Brady] evidence in question

actually existed at the time of trial, and was withheld from production").  In any event, Petitioner

has not established how he was prejudiced by the non-production of the actual tape.  This portion

of Claim 15 must be denied.

           **iii.**       ***Agreement Between Prosecutor and Cruz Regarding Unrelated,***

### *Pending Charge (Claim 15(c))*

Petitioner asserts that Cruz testified for the State in exchange for leniency on a pending criminal matter which was unrelated to the activity at issue in Petitioner's trial. Yet Petitioner fails to explain what this other criminal matter consisted of.[35] However, even if Petitioner's unsupported assertion is true, he also fails to state how this non-disclosure was prejudicial. As discussed above, the existence of Cruz's cooperation agreement was disclosed prior to trial and was actually and effectively utilized on cross-examination. The disclosure of an additional plea deal is not, without more, sufficient to undermine confidence in the verdict. Accordingly, this aspect of Claim 15 must be denied.

### iv. *Vehicle and Traffic Violations Charged to Cruz (Claim 15(d))*

Petitioner asserts the prosecutor failed to disclose the actual traffic tickets issued to Cruz by the police on the day of the traffic stop. As discussed above, it is not reasonably probable that the result of the proceedings would have been different had his attorney requested this material. Similarly, Petitioner has failed to explain how confidence in the verdict was undermined as a result of this non-disclosure. Consequently, this portion of Claim 15 must be denied.

### b. **Prosecutorial Misconduct Claim (Claim 16)**

Petitioner asserts he was deprived of his right to a fair trial due to "the prosecutor's

---

[35] A review of the transcripts reveals that, as a condition of Cruz's cooperation agreement, he was required to refrain from criminal activity. Yet he was subsequently arrested for a minor offense and as a consequence broke the agreement. (See Apr. 28, 2003 Tr., at 382-83; Apr. 29, 2003 Tr., at 487-90, 518-19). If this subsequent arrest is the unrelated charge Petitioner is referring to, I note that Cruz stated he already pled guilty to that charge prior to testifying in Petitioner's case. (Apr. 28, 2003 Tr., at 382-83). Therefore, that charge was not "pending." In any event, Cruz also stated that he understood that because he broke the agreement, he could not expect to receive his plea bargained sentence on the original narcotics offense. (Apr. 29, 2003 Tr., at 519).

41

pervasive and egregious closing argument inflammatories and lying to juror." (Pro Se Supp. Br.,

at 23 (typeface altered from original)). As discussed above, to the extent that this claim may be

liberally construed to argue that the prosecutor improperly shifted the burden of proof or made

comments about defense counsel, such arguments lack merit. A review of the transcripts of the

summation reveals that nothing inflammatory was said. The claim must be denied.

### c.   Improper Use of Character Evidence (Claim 17)

Petitioner asserts he was deprived of his right to a fair trial due to "the placing of

defendant's characterization into evidence." (Pro Se Supp. Br., at 23 (typeface altered from

original)). This claim may be liberally construed to argue that the State improperly introduced

character evidence into trial. I first note that Petitioner has failed to state which evidence

constituted the allegedly erroneous character evidence.[36]  Second, I note that it is well-settled

that even erroneous evidentiary rulings by a state court will generally fail to rise to the level of a

federal due process violation which would warrant *habeas* relief.  See, e.g., Sims v. Stinton, 101

F. Supp.2d 187, 194 (S.D.N.Y. 2000); see also Estelle v. McGuire, 502 U.S. 62, 67 (1991)

("erroneous application of state evidentiary rules alone does not merit habeas relief"); Hawkins

v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) ("habeas corpus relief does not lie for errors of

state law, and that necessarily includes erroneous evidentiary rulings").[37]  "The introduction of

---

[36] To the extent that Petitioner's claim involves testimony by Cruz and Mendez regarding their joint involvement in drug deals, I note that the pretrial hearing addressed this issue. (See, e.g., Apr. 10, 2003 Tr., at 106-109 (Docket No. 16)). The court found that much of the evidence concerning prior narcotics activities was more prejudicial than probative and accordingly excluded it. (See Apr. 14, 2003 Tr., at 6-10). Only testimony concerning the drugs that were transported on the day in question, as well as background testimony regarding how Cruz and Mendez came to know Petitioner, was admitted. (See id.)

[37] Additionally, I note that, even prior to AEDPA,

42

improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).  Evidence will be unfairly prejudicial if it is "sufficiently material to provide the basis for conviction or to remove reasonable doubt that would have existed on the record without it," which is determined "in light of the entire record before the jury."  Id. (internal quotations omitted).

In light of the record as a whole, I do not find that any statement which reflected on Petitioner's prior narcotics trafficking activity to be sufficiently material as to have provided the basis for his conviction.  Specifically, the testimony by Cruz and Mendez regarding their previous narcotics associations with Petitioner was simply not what convicted Petitioner of the instant offenses.  Rather, the direct testimony by Petitioner's accomplices as to the events of the day of the traffic stop provided the basis for his conviction.  The witnesses testified that the drugs found in the trunk were Petitioner's, that Petitioner knew they were there, and that Petitioner intended to sell them.  Petitioner's due process rights were not violated and accordingly this claim must be denied.

**4.**   *__Legally Insufficient Evidence Claim (Claim 18)__*

Petitioner argues that the evidence was legally insufficient to sustain his conviction.  (See

---

> [T]he Supreme Court had a traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts.  The court has never questioned the power of the States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability – even if the defendant would prefer to see that evidence admitted.

Hawkins, 460 F.3d at 244.

Pro Se Supp. Br., at 28-31).  Specifically, Petitioner asserts that (1) the police officer's testimony was wholly unreliable because the State failed to introduce the radio transmission tape and the traffic summons issued to Cruz, (2) the prosecution failed to introduce any material evidence that corroborated the testimonies of Cruz and Mendez, (3) the State failed to show the motive for the crime, and (4) Cruz and Mendez falsely testified and did so only to obtain favorable plea bargains.  (See id.)  Respondent contends that the state court's determination that the evidence was sufficient is neither contrary to, nor an unreasonable application of, clearly established federal law.  (See Resp't Mem., at 26-29).

        "[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  Jackson v. Virginia, 443 U.S. 307, 315 (1979) (internal quotation omitted).  However, on habeas review, a claim of legally insufficient evidence will not succeed where, "after viewing the evidence in the light most favorable to the prosecution any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  A habeas petitioner, therefore, "bears a very heavy burden" to show that no rational jury could have found the substantive elements of the offense beyond a reasonable doubt and succeed on such a claim.  Fama, 235 F.3d at 811 (internal quotation omitted).  In addition, "when it considers the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime."  Id.

        Petitioner has failed to establish that, at the time he was convicted, no reasonable jury could have found him guilty of criminal possession of a controlled substance in the first and third degrees, or criminal possession of marihuana in the fourth degree.  Under New York law, a person is guilty of criminal possession of a controlled substance in the first degree when he

44

"knowingly and unlawfully possesses . . . one or more . . . substances containing a narcotic drug and said . . . substances are of an aggregate weigh of four ounces or more." N.Y. Penal Law § 220.21(1), amended by 2004 N.Y. Sess. Laws ch. 738, § 22. A person is guilty of criminal possession of a controlled substance in the third degree when he "knowingly and unlawfully possesses . . . a narcotic drug with intent to sell it," id. § 220.16(1), "a hallucinogenic substance with intent to sell it and said hallucinogenic substance weighs one gram or more," id. § 220.16(6), or "a hallucinogenic substance and said hallucinogenic substance weighs five grams or more," id. § 220.16(11). A person is guilty of criminal possession of marihuana in the fourth degree when he "knowingly and unlawfully possesses one or more . . . substances containing marihuana and the . . . substances are of an aggregate weight of more than two ounces." Id. § 221.15.

The record indicates that there was sufficient evidence from which a rational jury could find each element of these offenses beyond a reasonable doubt. At trial, the prosecution presented forensic evidence that the trunk of the Thunderbird contained five kilograms of cocaine, thirteen grams of Methyldioxymethamphetamine ("Ecstacy"), and over two ounces of marihuana. Testimony by Cruz and Mendez established that the drugs belonged to Petitioner, that he knew they were there, and that he intended to drive to Massachusetts to sell them. The fact that Petitioner's accomplices testified in exchange for favorable plea bargains does not extinguish the substance of their direct testimony. The credibility of a witness's testimony is a decision to be made by the jury and is therefore not a matter that is reviewable by a federal habeas court. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983); see also United States v. Kinney, 211 F.3d 13, 18 (2d Cir. 2000) (quoting United States v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)) ("In analyzing a sufficiency of the evidence claim, '[w]e defer to the jury's

45

determination of the weight of the evidence and the credibility of the witnesses, and to the jury's choice of competing inferences that can be drawn from the evidence.'"). Additionally, even if the tape of the police officer's radio transmission and the traffic summons issued to Cruz were produced, Petitioner still fails to meet his heavy *habeas* burden to show that the introduction of this evidence would have prevented *any* rational jury from finding Petitioner guilty beyond a reasonable doubt. The claim must be denied.

5. ***Excessive Sentence Claim (Claim 19)***

Petitioner asserts that his original sentence of twenty years to life imprisonment was excessive.[38] (Pro Se Supp. Br., at 32). Specifically, he argues that his narcotics conviction does not warrant the kind of lengthy sentence that should only be reserved for murder convictions, and that the influence of his family makes "remote" the possibility that he would commit another crime should a lesser sentence be imposed. (Id. at 33). Respondent contends that Petitioner's claim fails to state a federal question necessary for *habeas* review. (See Resp't Mem., at 30-32).

It is well-settled that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam). At the time of Petitioner's initial sentence, New York law permitted a sentence of twenty years to life imprisonment for a conviction of criminal possession of a controlled substance in the first degree. See N.Y. Penal Law § 220.21 (classifying the conviction as a class A-I felony); id. § 70.00, amended by 2004 N.Y. Sess. Laws ch. 738, §§ 28-

---

[38] As discussed above, Petitioner's twenty year term of imprisonment on the first degree charge was reduced upon re-sentencing to fifteen years plus five years of post-release supervision. Although Petitioner appealed his re-sentence on the grounds that it was unduly harsh, excessive, and in violation of due process, the record does not indicate that those claims were exhausted and, in any event, Petitioner has not moved to amend his *habeas* petition to incorporate them. Accordingly, I address only the claim raised on direct appeal.

29 (imposing indeterminate sentence of not less than fifteen years to life nor more than twenty-five years to life for class A-I felony convictions).  Additionally, Petitioner's re-sentence is also within the appropriate range under state law.  See id. § 70.00(1) (indeterminate sentence may not be provided to convictions under § 220.21); id. § 70.71 (imposing determinate sentence of no less than eight and no more than twenty years, plus a period of post-release supervision pursuant to § 70.45, to class A-I felony convictions under § 220.21); id. § 70.45(2) (requiring five years of post-release supervision for non-sex offense determinate sentences, including those for A-I felony convictions).  Accordingly, this claim must be denied.

## IV.  CONCLUSION

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Cathy Seibel, at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

47

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.

Dated: September 22, 2011
       White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Cathy Seibel
United States Courthouse
300 Quarropas Street
White Plains, NY 10601

Susanne Brody
Federal Defenders of New York, Inc.
300 Quarropas Street
White Plains, NY 10601

Johannes Gonzalez
03-A-3468
Green Haven Correctional Facility
594 Route 216
Stormville, NY 12585-0010

John James Sergi, Esq.
Office of the Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, NY 10601